1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES,                          Case No. 6:19-mj-00025-JDP-1

12                  Plaintiff,                ORDER DENYING DEFENDANT'S MOTION
                                              TO SUPPRESS
13          v.
                                              ECF No. 8
14    LEO IBUS SAMPAYAN,

15                  Defendant.

16

17          On May 20, 2019, the United States filed a criminal complaint against defendant Leo Ibus

18    Sampayan, alleging that, while visiting Yosemite National Park on April 24 of the same year,

19    Sampayan operated a motor vehicle without due care in violation of 36 C.F.R. § 4.22(b)(1) and

20    possessed cocaine in violation of 36 C.F.R. § 2.35(b)(2). *See* ECF No. 1.  According to the

21    complaint, the incident began when Sampayan rear-ended a car at a Yosemite Valley stop sign.

22    *Id*. at 1.  Responding rangers performed a routine check of Sampayan's name and driver's license

23    number and turned up a warrant for felony fraud in Alameda County.  Dispatch told the rangers

24    that the warrant was a "close match"—showing Sampayan's license number and a similar name,

25    but a different birthday.  When informed of the warrant, Sampayan, still in his vehicle, protested

26    that it must be for his brother—an individual, he said, with a near-identical name ("Leonel") and

27    outstanding fraud charges.

28          The rangers placed Sampayan under arrest and searched him, uncovering a bag of cocaine

1

in his sock.  But later investigation revealed that Sampayan was not, in fact, the individual described in the Alameda County warrant.  ECF No. 1 at 4.

On September 3, 2019, Sampayan moved to suppress the cocaine and his statements about it, contending that the search was unlawful.  ECF No. 8.  On December 2, I invited additional briefing on the subjective state of mind required for a lawful "mistaken identity" arrest under the Supreme Court's opinion in *Hill v. California*, 401 U.S. 797 (1971).  The parties submitted additional briefing on January 8, 2020, and we discussed the matter at a hearing on January 22.  *See* ECF Nos. 16, 17, and 18.

Because I hold, as a matter of first impression, that subjective *certainty* is not required for a lawful arrest under *Hill*, I conclude that Sampayan's arrest and the search incident to it were lawful.  I therefore deny the motion to suppress.

**ANALYSIS**

The Supreme Court has long held that "[a]mong the exceptions to the warrant requirement is a search incident to a lawful arrest."  *Arizona v. Gant*, 556 U.S. 332, 338 (2009).  In *Chimel v. California*, the Supreme Court defined the scope of a search incident-to-arrest to include "the arrestee's person and the area within his immediate control."  395 U.S. 752, 763 (1969) (internal quotation marks omitted).  After all, the Court reasoned, "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons . . . . and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."  *Id*.  Thus, if Sampayan's arrest was lawful, the search that uncovered the cocaine was also lawful, because that search was well within the scope of *Chimel*.

Were Sampayan the person described in the Alameda County arrest warrant, there would be no doubt that his arrest was lawful.  Here, however, the rangers arrested the wrong man.  Nonetheless, it does not follow that the arrest was unlawful.  In *Hill v. California*, the Supreme Court outlined conditions under which a mistaken arrest may still be a valid one.  When officers arrest the wrong person, the Court said, "subjective good-faith belief would not in itself justify either the arrest or the subsequent search."  401 U.S. 797, 804.  But, the Court continued,

2

"sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment"—and, thus, a mistaken arrest may still be a lawful one if the officers' "mistake was understandable and the arrest a reasonable response to the situation facing them at the time." *Id*. With this touchstone of reasonableness, *Hill* created the test that guides cases like the one before us now: "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Id*. at 802 (1971) (quoting *People v. Hill*, 69 Cal. 2d 550, 552 (1968)).

      *Hill* is best read as establishing a two-part test. *See, e.g.*, *United States v. Glover*, 725 F.2d 120, 122 (D.C. Cir. 1984). First, the arresting officers must make a subjective mistake: they must believe, to at least some extent, that they are arresting the right person. Second, their subjective mistake must be objectively reasonable.

      In much post-*Hill* case law dealing with mistaken identity, the emphasis has been on the objective reasonableness of the arrest. *See, e.g.*, *United States v. Carter*, 168 F.3d 502 (9th Cir. 1999) ("[I]f an officer makes an arrest as a result of mistaken identity, the arrest is valid as long as the mistake was objectively reasonable."); *Gero v. Henault*, 740 F.2d 78, 84-85 (1st Cir. 1984) ("Hill [has] been construed, and rightly so, to mean that where there is a facially valid warrant or probable cause for arrest, and here there were both, the only question is whether it was reasonable for the arresting officers to believe that the person arrested was the one sought."). This emphasis accords with a more general trend in Fourth Amendment law to view "reasonableness under the Fourth Amendment [as] predominantly an objective inquiry." *City of Indianapolis v. Edmond*, 531 U.S. 32, 47 (2000).

      Predominantly, but not entirely. For several reasons, it would be a mistake to abandon *Hill*'s threshold requirement of a subjective mistake. For starters, the requirement is advanced by *Hill* itself, which states that, in a case of mistaken identity, "subjective good-faith belief would not *in itself* justify either the arrest or the subsequent search." 401 U.S. at 804 (emphasis added); *see also Glover*, 725 F.2d at 122 ("The agents' subjective good-faith belief alone is insufficient to validate the arrest."). Indeed, the very notion of a good-faith *mistake*—as opposed to a willful,

bad-faith strategy—suggests some kind of subjective error. Such a subjective requirement, moreover, serves a worthy policy goal—namely, discouraging abuse by officers who know they have the wrong person. In short, this area of Fourth Amendment law protects reasonable *mistakes*, not reasonable-seeming pretenses. *Hill*'s precondition of an officer's mistake is what takes us out from under the Supreme Court's default guidance that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996).

The difference between the subjective and objective parts of *Hill*'s test matters here. The court has no doubt that it was *objectively* reasonable to mistake Sampayan for the man described in the warrant. The names and driver's license numbers were a close match. And, while there were some discrepancies—the dates of birth, a slight variation in spelling—those details are not of a magnitude that would negate objective reasonableness. On the contrary, such small differences are commonplace in law and life. In *Hill*, for example, the Supreme Court held that the officers had probable cause to arrest Hill himself, despite the fact that Hill offered a different name and had a different height and weight than the man the police sought. *See* 401 U.S. at 803 ("[A]liases and false identifications are not uncommon."); *see also, e.g., Bingham v. City of Manhattan Beach*, 341 F.3d 939, 952 (9th Cir. 2003) ("[T]he only differences in the physical description were a height difference of one inch and a weight difference of ten pounds; the dates of birth differed by two years. Detaining Bingham to verify a warrant whose identifying information matched him so closely is not an objectively unreasonable decision."); *Garcia v. Cty. of Tulare*, No. 1:08CV 0940AWISMS, 2010 WL 424405, at *10-11 (E.D. Cal. Jan. 27, 2010) ("Plaintiff makes much of the fact that the warrant and Plaintiff's driver's license contained dissimilar information, particularly about the birth dates . . . . [But] the court cannot find Deputy Robinson's mistake unreasonable.").

The harder question is whether the three arresting rangers subjectively believed that Sampayan was the man identified by the Alameda warrant. The evidence from the arrest audio and video—not to mention the rangers' testimony at the suppression hearing—suggests that they did not believe this with ironclad certainty. The rangers can be heard discussing the slight

4

discrepancies between the Alameda warrant and the facts on the ground. They discuss Sampayan's contention—a mix-up with his brother—as if it were plausible.

But *Hill* does not require ironclad certainty. While *Hill* and its progeny speak in black-and-white terms—"belief," "mistake," and so on—these cases should not be read as insisting that all mistakes be made with confidence. Such a rule would be contrary to *Hill*'s admonition that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." 401 U.S. at 804. And such a rule would be unrealistic. Many law enforcement decisions must be made urgently and with imperfect information, and under such circumstances the law should not discourage officers from recognizing uncertainty and nuance.

How much subjective certainty does *Hill* require? *Hill*'s own touchstone—"sufficient probability"—is hardly self-interpreting. Neither is the language that appears in the Constitution itself: probable cause. Indeed, the difficulty of parsing mental states and shoehorning them into legal and statistical categories is one of the reasons that the Supreme Court has, over time, shied away from subjective inquiries. *See, e.g.*, *Horton v. California*, 496 U.S. 128, 138 (1990) ("[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer.").

But the court need not determine here the precise degree of subjective belief that an arresting officer must have to avail himself of *Hill*'s doctrine. Wherever the floor sits, all of the arresting rangers stood above it. They thought, sincerely and in good faith, that it was more likely than not that Sampayan was the individual covered by the warrant.[1] Arresting Sampayan based on this good faith, more-likely-than-not belief "to verify a warrant whose identifying information matched him so closely [was] not an objectively unreasonable decision." *Cf. Bingham*, 341 F.3d at 952. The arrest was not "pretextual." *Cf. United States v. McEachern*, 675 F.2d 618, 622 (4th Cir. 1982). Whatever *Hill*'s "sufficient probability" touchstone requires, it does not require complete certainty, and I hold that it does not require more than a good-faith, more-likely-than-

---

[1] When asked at the suppression hearing about their degree of certainty, the three rangers reported confidences of, respectively, "95%," "65 to 70%," and "more than likely." Because I conclude that all of these reported confidence levels clear the *Hill* threshold, I also do not need to resolve which individual ranger executed Sampayan's arrest.

not belief that the officers have the right person.

Here, the rangers had at least that. Their "mistake was understandable and the arrest a reasonable response to the situation facing them at the time." *Hill*, 401 U.S. at 804. Because Sampayan's arrest was lawful, the search incident to that arrest was also lawful. The court therefore denies the motion to suppress. ECF No. 8.

IT IS SO ORDERED.

Dated:     March 18, 2020               _____

                                          UNITED STATES MAGISTRATE JUDGE

No. 205.